IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PRISCILLA ROLLINS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 09-2379 |
| VERIZON MARYLAND, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Priscilla Rollins ("Rollins") brings this cause of action against her current employer, Defendant Verizon Maryland, Inc. ("Verizon"), for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; race discrimination and hostile work environment in violation of 42 U.S.C. § 1981 ("Section 1981"); disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; intentional infliction of emotional distress; and negligent infliction of emotional distress. Now pending before this Court is Defendant Verizon's Motion to Dismiss. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Verizon's Motion to Dismiss (ECF No. 17) is GRANTED as to Counts I, II and IV-IX but DENIED as to Count III, which states a claim for retaliation under Title VII.

BACKGROUND

In ruling on a motion to dismiss, "[t]he factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff Priscilla Rollins, an African-American woman, has worked at Verizon in customer service since 1993. Amended Complaint at ¶¶ 3, 5. In January 2004, Verizon reorganized this group into two smaller groups: an online call center team and an offline call center team. *Id*. ¶¶ 5, 9. Rollins was placed on the online team, where she has worked to this day. *Id*. ¶ 5. Rollins alleges that the online team is "considered the least desirable job" and that the reorganization made the team "98% African-American." *Id*. ¶ 9. By comparison, Rollins asserts that the offline team is a more desirable team to work for and was reorganized to be "100% non African-American." *Id*. ¶ 9.

Maria Luaces, who is Hispanic, joined the Enterprise Solutions Group on November 23, 2003, and eventually became one of the team leaders. *Id*. Ex. 3. Rollins contends that Luaces spoke to Verizon's African-American employees in a derogatory and disrespectful manner, but spoke in a deferential tone when addressing employees of other races. *Id*. ¶¶ 10, 13. Rollins asserts that on or about January 20, 2004, Luaces referred to the online group, comprised of primary African-American employees, as "stupid and lazy." *Id*. Ex. 2. Notably, Rollins does not contend that Luaces has ever made an unprofessional or racist comment directly to her. *Id*. Ex. 3. At some point in January or February 2004, Rollins complained to her supervisor, Javon Day-Miles, an African-American woman, about Luaces's conduct, but contends that her concerns were not addressed. *Id*. ¶ 11; Ex. 3.

2

Accordingly, on February 10, 2004, Rollins filed an internal complaint alleging racial discrimination. *Id.* ¶ 12; Ex. 4. Verizon subsequently investigated Rollins's claims and found that: "The corroborative evidence does not substantiate that Ms. Luaces's employment actions are race-based. However, the corroborative evidence suggests that Ms. Luaces's interactions with her team members are perceived as disrespectful and race-based." *Id.* Ex. 4. Rollins alleges that in retaliation for filing this internal complaint:

- She was — and continues to be — denied the opportunity to work overtime. *Id.* ¶ 32; Ex. 15.[1]

- Her workload substantially increased and she was "given more responsibilities." *Id.* ¶ 19.

- Contrary to standard procedure, Karen Pernell, one of her supervisors, told Rollins's colleagues not to assist with her accounts while she was out of the office. *Id.* ¶ 20.

Rollins makes a number of other allegations relating to discriminatory conduct she experienced at Verizon. She contends that in June 2004, Pernell refused to assist her with logging orders on one occasion. *Id.* ¶ 21; Ex. 9. On September 16, 2004, while she was at a coworker's desk asking for aspirin, Jim Childress, a Verizon supervisor, asked if she was approaching her coworker about "union business" and then yelled at her and told her to sit down. *Id.* ¶ 22. In December 2004, John Miraglia, another Verizon supervisor, "shouted throughout the Enterprise Team floor that Plaintiff was being insubordinate." *Id.* ¶ 23. On April 22, 2005, Rollins's team leader, Karen Pernell, told her in the "presence of others" that she had "failed to follow work processes and work performance." *Id.* ¶ 24.

In May 2005, Rollins sought treatment for her "workplace stress," and subsequently took medical leave pursuant to the Family and Medical Leave Act from May 2005 until August 1,

---

[1] Although Rollins's complaint generally states that she was "denied overtime," her attached exhibit indicates that Rollins intends to allege that she was denied the *opportunity* to work overtime. *See* Am. Compl. Ex 15.

2005. *Id.* ¶ 25. On February 1, 2006, after she had returned to work, Rollins contends that she was asked to remove or cover up a shirt she was wearing in support of Black History Month that other employees found offensive. *Id.* ¶ 30. Rollins claims that in June 2006 her payroll and timesheet information was inaccurately reported. *Id.* ¶ 32. Finally, Rollins alleges that from September 2006 to the present, Verizon has denied her access to her personnel file. *Id.* ¶ 33.

On January 25, 2007, Rollins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Verizon retaliated against her from February 13, 2004, until September 1, 2006, as a result of her internal complaint. *Id.* ¶ 18; Ex. 18.[2] On September 4, 2009, she filed her original complaint *pro se* in this Court. On February 16, 2010, Rollins filed an Amended Complaint with the assistance of counsel. ECF No. 14. On April 14, 2010, Verizon filed the pending Motion to Dismiss. ECF No. 17.

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering

---

[2] On March 31, 2009, the EEOC issued a determination stating that its investigation found it was "more likely than not" that Verizon retaliated against Rollins "in the form of different terms and conditions, harassment and discipline for engaging in protected activity." Am. Compl. ¶ 36; Ex. 19.

4

a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

ANALYSIS

I.      **Title VII and ADA Claims (Counts I & II)**

In Count I, Rollins claims that the Enterprise Solutions Group was reorganized in a racially discriminatory manner in violation of Title VII. In Count II, Rollins contends that Verizon interfered with her medical leave in violation with the Americans with Disabilities Act. Verizon argues that these claims fail as a matter of law because Rollins did not exhaust her administrative remedies and because they are barred by the statute of limitations.

   A.      **Timeliness of Rollins's Race and Disability Discrimination Claims**

In Count I, Rollins explains that her race discrimination claim is based upon Verizon's alleged discriminatory reorganization of the Enterprise Solutions Group in January 2004. Count I also incorporates Rollins's allegations that in January and February 2004 her supervisor, Maria Luaces, spoke in a disrespectful tone towards African-Americans and called them "stupid and lazy." Am. Compl. ¶¶ 10, 13; Ex. 2. In Count II, Rollins explains that her disability discrimination claim is based upon Verizon's alleged interference with the medical leave she took from May to August 2005. Verizon contends that these claims must be dismissed because they are time-barred due to Rollins's failure to file an EEOC charge within 300 days of the alleged violations.

In Maryland, race discrimination claims under Title VII and disability discrimination claims under the ADA must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117. Here, Rollins filed her EEOC charge on January 25, 2007. Thus, Rollins's claims based upon alleged discriminatory acts occurring prior to March 31, 2006 are time-barred and not properly before this Court. *See, e.g.*, *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) ("[i]ncidents

outside the statutory window are time-barred"). Rollins's race discrimination claim under Title VII and disability discrimination claim under the ADA are based upon events that are alleged to have happened in or about January and February 2004, and from May to August 2005, respectively. Accordingly, this Court must dismiss Rollins's claims for race and disability discrimination because they are untimely.

### B. Exhaustion of Administrative Remedies

In the alternative, even if these allegations were timely, Verizon claims that Rollins's allegations of race discrimination under Title VII and disability discrimination under the ADA must be dismissed for failure to exhaust administrative remedies because Rollins did not allege claims of race and disability discrimination in the body of her EEOC charge. Before filing suit in federal court a plaintiff must exhaust her administrative remedies with the EEOC. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005); *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The purpose of the exhaustion requirement is to ensure "that the employer is put on notice of the alleged violations so that the matter can be resolved out of court[,] if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005) (citation omitted). To fulfill this obligation, a plaintiff must set forth in her EEOC grievance all factual allegations that she anticipates raising. *Chacko,* 429 F.3d at 509. Because lawyers do not typically complete the administrative charges, courts tend to construe them liberally. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988). Nonetheless, a plaintiff "fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." *Id*. An EEOC charge therefore "defines the scope of the plaintiff's right to institute a civil suit." *Bryant*, 288 F.3d at 132-33.

In this case, the allegations in Rollins's EEOC charge state that she was subjected to retaliation "in the form of harassment, different terms and conditions of employment, a hostile work environment and threatened with discipline" after she filed the internal complaint of discrimination. Am. Compl. Ex. 18. These allegations do not assert that Rollins was discriminated against based upon her race or disability. Furthermore, in the EEOC charge form Rollins only checked the box indicating that she was alleging discrimination based upon retaliation, and did not check the boxes indicating that she was also pursuing claims for discrimination based upon race or disability. As the U.S. Court of Appeals for the Fourth Circuit has held, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko*, 429 F.3d at 509. Thus, a plaintiff's claim is typically barred if her charge alleges discrimination on one basis — such as retaliation for filing an internal complaint — and she introduces another basis in formal litigation — such as race or disability. *Id.*; *see also Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination).

Rollins argues that the parties understood that her retaliation claim in her EEOC charge included claims of race discrimination. Rollins supports this argument with the statement in the March 31, 2009, EEOC determination explaining that Rollins's charge alleged that she was subjected to retaliation "for filing an internal EEO complaint alleging racial discrimination." Am. Compl. Ex. 19. The EEOC did not, however, investigate Rollins's underlying complaint of race discrimination. The EEOC only investigated her retaliation claim, as demonstrated by its finding that it was "more likely than not" that Verizon retaliated against Rollins "in the form of different terms and conditions, harassment and discipline for engaging in protected activity." Am. Compl. ¶ 36; Ex. 19. Accordingly, because Counts I and II exceed the scope of Rollins's

8

EEOC charge, Rollins has failed to exhaust her administrative remedies with respect to her Title VII racial discrimination claim and her ADA interference with leave claim.

## II.     Retaliation Claim (Count III)

Rollins claims in Count III that after she filed her internal complaint on February 10, 2004, Verizon retaliated against her in violation of Title VII. Verizon asserts that some of Rollins's allegations of retaliation are untimely and that the rest do not constitute adverse actions that were causally connected to her protected activity.

### A.     Timeliness of Rollins's Retaliation Claim

Verizon contends that the majority of Rollins's allegations that relate to her retaliation claim are time-barred. As explained in Section I, any retaliatory events occurring more than 300 days prior to the filing of an EEOC charge in Maryland are time-barred. 42 U.S.C. § 2000e-5(e)(1). Since Rollins filed her EEOC charge on January 25, 2007, any alleged discriminatory acts that took place prior to March 31, 2006, are time-barred and not properly before this Court. Rollins states in her Opposition that the following actions support her retaliation claim:

- "Shortly after [she filed] the [internal] complaint" her workload increased.

- "After filing the [internal] complaint" Karen Pernell, one of her supervisors, told Rollins's colleagues not to assist with her accounts while she was out of the office.

- In June 2004, Pernell did not respond to her request for assistance in logging orders.

- Two different superiors, Jim Childress and John Miraglia, yelled at her in front of her co-workers on September 16, 2004, and in December 2004.

- In August 2005 two other supervisors, Pamela Styles and Jovanne Day-Miles, told one of her co-workers not to help Rollins with her work.

- While she was on FMLA leave from May until August 2005, she was asked to return to work early.

9

- From the time Rollins pursued her internal complaint to the present, she has been denied the opportunity to work overtime.

- From September 2006 to the present, Rollins has been refused access to her employee file.

Rollins Opp'n at 13; Am. Compl. ¶¶ 19-20, 22-23, 25, 32-33. As an initial matter, Verizon concedes that Rollins has timely alleged that she was retaliated against when she was denied the opportunity to work overtime and was denied access to her personnel file. Verizon Reply at 5-6. The remaining claims, however, pertain to retaliatory actions that are alleged to have taken place before March 31, 2006. Thus, they are time-barred.

Rollins asserts that these allegations are not untimely because they are preserved under the continuing violations doctrine. Under this doctrine, a plaintiff may rely on incidents occurring before the statute of limitations period if those incidents "can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." *Beall*, 130 F.3d at 620-21 (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980) (per curiam)). The continuing violation doctrine does not, however, apply to discrete acts of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, (2002); *Janey v. N. Hess Sons, Inc.*, 268 F. Supp. 2d 616, 623 (D. Md. 2003). In this case, each of Rollins's untimely allegations constitute a discrete act because the alleged retaliatory actions were taken by different Verizon employees months apart from each other. Accordingly, these allegations of retaliation are not saved by the continuing violation doctrine and are time-barred.

**B. Adverse Actions**

Although Verizon concedes that Rollins's allegations that she was retaliated against when she was denied the opportunity to work overtime and was denied access to her personnel file are timely, it maintains that these claims do not constitute adverse actions that are causally

10

connected to her protected activity. To make a *prima facie* showing of retaliation, an employee must show (1) that she engaged in a protected activity, (2) that her employer took an employment action against her that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (en banc). The first prong of this test is satisfied because complaining about racial discrimination and filing an EEOC charge are protected activities within the meaning of Title VII. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Thus, this Court must next determine whether the allegedly retaliatory conduct that occurred after March 2006 constitute actions which "a reasonable employee would have found . . . materially adverse, []which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern,* 548 U.S. at 68. Numerous courts have held that a denial of the opportunity to work overtime constitutes retaliatory conduct. *See, e.g.*, *Walker v. England*, 590 F. Supp. 2d 113, 143 (D.D.C. 2008) ("Because the denial of overtime work would result in the denial of overtime pay . . . the Court finds that denial of overtime work in retaliation for EEO-related activities clearly constitutes an adverse action."); *Rothenberger v. New York City Police Dep't*, Civ. No. 06-868, 2008 WL 2435563, at *9 (E.D.N.Y. June 16, 2008) ("Denying an employee the opportunity to work overtime can constitute a materially adverse employment action."); *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 587-88 (E.D. Pa. 2005) (denial of overtime opportunities constitute adverse action). Additionally, at least one court has found that withholding personnel records and files constitutes adverse action under Title VII. *See Balakrishnan v. Bd. of Supervisors of La. State*

*Univ. & Agric. & Mech. Coll.*, 2009 U.S. Dist. LEXIS 66266, at * 13 (E.D. La. July 20, 2009) (holding that plaintiff's allegations that her former employer withheld her personnel records were sufficient to establish an adverse action). Thus, Rollins has sufficiently alleged that Verizon took adverse actions against her.

Finally, this Court must analyze whether Rollins has sufficiently alleged a causal connection between her protected activity and the allegedly adverse actions. Rollins claims that she was "denied overtime from [the] time she pursued her EEO complaint to the present." Am. Compl. ¶ 32. Though Rollins does not specify that she was refused access to her employee file as a result of her internal complaints or filing of an EEOC charge, it is reasonable to infer that she wanted access to her personnel file in order to pursue her discrimination claims. Rollins's allegations that Verizon denied her overtime and access to her personnel file are therefore sufficient to state a plausible claim of retaliation. Accordingly, Verizon's Motion to Dismiss Count III is denied as to Rollins's allegations of retaliatory conduct that took place after March 31, 2006.

### III.   Family and Medical Leave Act Claim (Count IV)

In Count IV, Rollins claims that Verizon violated the Family and Medical Leave Act by subjecting her to "disciplinary actions, work related inquiries, as well as adverse employment actions" while she was on leave. Am. Compl. ¶¶ 51-53. Verizon maintains that Rollins's claims are untimely. Under the FMLA, a plaintiff must typically bring a cause of action within two years after an alleged violation, or within three years if the alleged violation is willful. *See* U.S.C. § 2617(c). Rollins took FMLA leave from May until August 2005. *Id*. ¶ 25. Rollins's initial complaint was not filed until September 4, 2009, which is four years after she took her leave. Accordingly, Rollins's FMLA claim is time-barred.

## IV. Intentional Infliction of Emotional Distress Claim (Count V)

Rollins claims in Count V that she has "endured repeated acts of intentional and extreme and outrageous behavior" by Verizon. Am. Compl. ¶ 56. In Maryland, intentional infliction of emotional distress ("IIED") claims are "rarely viable" and are to be used "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (internal quotations and citation omitted); *see also Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997). Thus, to succeed on an emotional distress claim in Maryland, a plaintiff must meet a very high pleading standard.

Verizon contends that Rollins has not alleged outrageous conduct. To prove that conduct is outrageous, a plaintiff must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614 (quoting Restatement (Second) of Torts § 46 comment d (1965)). Rollins's allegations of outrageous conduct are that a supervisor yelled at her to "sit down" in front of her co-workers, that she was disciplined in front of co-workers, that her co-workers were advised not to assist her, and that she was threatened with termination. Am. Compl. ¶ 56. Though this alleged conduct may have embarrassed or upset Rollins, it does not constitute conduct that goes "beyond all possible bounds of decency." Furthermore, this Court has previously held that poor behavior at the workplace rarely rises to the level of extreme and outrageous conduct. *See Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("workplace harassment . . . almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional

infliction of emotional distress under Maryland law"). Accordingly, Rollins's allegations do not sufficiently assert a claim for intentional infliction of emotional distress.

## V. Negligent Infliction of Emotional Distress (Count VI)

Rollins attempts to state a claim for negligent infliction of emotional distress ("NIED") in Count VI. Maryland does not, however, recognize this cause of action. *See, e.g.*, *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000) ("Maryland does not recognize an independent tort for negligent infliction of emotional distress."); *Davidson-Nadwodny v. Wal-Mart Assocs.*, 2008 U.S. Dist. LEXIS 45633, at *12 (D. Md. June 3, 2008) ("As to the negligent infliction of emotional distress claim, this tort is not recognized in the state of Maryland, and will therefore be dismissed."). Accordingly, Rollins's NIED claim must be dismissed.

## VI. Section 1981 Claims (Counts VIII and IX)[3]

In Counts VIII and IX, Rollins asserts claims for disparate treatment and hostile work environment pursuant to 42 U.S.C. § 1981. Verizon argues that Rollins's allegations as to these claims are time-barred and do not show that she was discriminated against on the basis of her race.

### A. Timeliness of Rollins's Disparate Treatment and Hostile Work Environment Claims

Verizon argues that Rollins has not made any timely allegations as to disparate treatment or hostile work environment that would form the basis of a claim under Section 1981. "In Maryland, the statute of limitations for employment discrimination suits brought under 42 U.S.C. § 1981 is three years." *Ingram v. Balt. Gas & Elec. Co., No. Civ. A.*, Civ. No. 02-2869, 2004 U.S. Dist. LEXIS 2853, at *7 (D. Md. Feb. 25, 2004). Rollins filed this lawsuit on September 4,

---

[3] Rollins does not include a Count VII in her Amended Complaint.

2009. Therefore, for the purposes of Rollins's Section 1981 claims, any claims related to incidents occurring before September 4, 2006, are time-barred.

Almost all of Rollins's allegations about her alleged mistreatment refer to conduct by Verizon employees that took place well before 2006. In her Opposition, Rollins contends that the following allegations in her Amended Complaint support her disparate treatment and hostile work environment claims:

> 1) In January 2004, though Rollins had the highest performance rating of the Enterprise team, when it was reorganized she was placed in the "less desirable" online group;
>
> 2) In January or February 2004, supervisor Luaces described Verizon's African-American employees as "stupid and lazy"; and
>
> 3) In February 2004, Verizon retaliated against her after she filed an internal complaint alleging race discrimination.

Rollins Opp'n at 10. All of this alleged misconduct happened over four years before Rollins filed her original complaint. The only allegations Rollins makes in her Amended Complaint that took place after September 2006 are her claims that she has been and is still being denied overtime and refused access to her personnel file. Am. Compl. ¶¶ 32, 33. Thus, this Court must next determine whether these two allegations are sufficient to withstand a claim for discrimination and hostile work environment under Section 1981.

### B. Discrimination on the Basis of Race

In order to establish a claim under Section 1981, a plaintiff must "show purposeful discrimination against them by Defendants based on their race." *Davis v. Wilmington Fin., Inc.*, 2010 U.S. Dist. LEXIS 29263, at *21-22 (D. Md. Mar. 26, 2010). Though Rollins claims she has been denied overtime since June 2006 and refused access to her personnel file since September 2006, her Amended Complaint states that she was treated in this way in retaliation for filing her internal complaint. Thus, Rollins does not assert in her Amended Complaint that she

was denied overtime or refused access to her file because she is an African-American. Rollins appears to concede this point in her Opposition brief, where she states that "the events of the hostile environment need not necessarily be racial in nature in order for the Plaintiff to bring a Section 1981 claim on the basis of racial discrimination." Rollins Opp'n at 11. Rollins's statement also misstates the law because, as this Court has explained, "[d]ismissal is appropriate [under 42 U.S.C. § 1981] if the complaint fails to allege any facts that might support an inference that the defendant intentionally discriminated against plaintiff because of [her race]." *Onawola v. Johns Hopkins Univ.*, 412 F. Supp. 2d 529, 533 (D. Md. 2006) (citing *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). Accordingly, Rollins has not pled allegations sufficient to state a claim for discrimination or hostile work environment under Section 1981.

## CONCLUSION

For the reasons stated above, Defendant Verizon's Motion to Dismiss (ECF No. 17) is GRANTED as to Counts I, II and IV-IX but DENIED as to Count III, which states a claim for retaliation under Title VII. A separate Order follows.

Dated: November 5, 2010  /s/_____
                          Richard D. Bennett
                          United States District Judge